IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERT C. BAUCOM, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 06-0785-WS-B |
| | ) | |
| SISCO STEVEDORING, LLC, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Summary Judgment on the Issue of Maintenance and Cure (doc. 36).  The Motion has been briefed and is ripe for disposition at this time.[1]

**I.      Background.[2]**

This case arises from a pair of incidents in which plaintiff, Robert C. Baucom, sustained injuries while working as a crane operator aboard a barge.  As a result of these incidents, plaintiff has sued defendants under a variety of theories, including the ancient maritime doctrine of maintenance and cure, pursuant to which he seeks recovery of *per diem* food and lodging

---

[1]      Plaintiff's Motion was filed early in the lifecycle of this litigation.  Indeed, the operative Rule 16(b) Scheduling Order (doc. 35) reflects a discovery cutoff date of September 14, 2007, with a dispositive motions filing deadline of October 4, 2007.  The general rule in this Circuit is that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery."  *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989).  Here, defendants have not argued that the Motion was filed prematurely or that they have had an inadequate opportunity to conduct discovery relating to same; therefore, the Motion will be considered at this time, notwithstanding the relatively embryonic stage of this action.

[2]      The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party.  *See Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004); *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1217 (11th Cir. 2005).  Thus, inasmuch as this Rule 56 motion was filed by plaintiff, defendants' evidence is taken as true and all justifiable inferences are drawn in their favor.

expenses and medical expenses relating to said injuries.[3]  Baucom seeks entry of summary judgment in his favor at this time on the maintenance and cure causes of action.[4]

      **A.**    ***The December 2003 Incident.***

It is undisputed that on December 8, 2003, Baucom was injured while working aboard a floating crane barge, the SISCO I, which was owned and operated by defendant Sisco Stevedoring, LLC ("Sisco").  Baucom was employed as a crane operator on the SISCO I, whose primary mission was to load and unload cargo to and from other vessels.  (Baucom Dep., at 45.)  On the day in question, Baucom was pulling on a cable onboard the SISCO I when "there was a pop in [his] back."  (*Id.* at 40.)  Baucom received medical treatment at the Springhill Memorial Hospital Emergency Room in Mobile, Alabama, and received ongoing care for the back injury for some time thereafter.  (*Id.* at 40, 42, 46.)

At the time of the December 2003 injury, Baucom was employed by defendant Pinnacle Marine Employee Management d/b/a Pinnacle Management Services ("Pinnacle")[5], and not by

---

[3]      Review of the First Amended Complaint (doc. 31) reveals that Baucom asserts claims against each defendant on theories of maintenance and cure, Jones Act negligence, and unseaworthiness.  Because plaintiff's Motion for Summary Judgment addresses solely the maintenance and cure claims, this Order will not examine the Jones Act negligence and unseaworthiness claims (Counts Five, Six, Eight, Nine, Ten and Twelve), which remain in play irrespective of the outcome of plaintiff's Motion.

[4]      The timing of this Motion appears driven, at least in part, by Baucom's desire to proceed with spinal surgery proposed by his treating physician, and his apparent inability to do so until such time as the maintenance and cure issue has been resolved.  For example, a Clinic Note by Tim S. Revels, M.D., one of Baucom's doctors, discusses the possibility of back surgery and also states, "There is an issue today of who will cover the cost of his surgery ....  Therefore, there is current bickering between the companies as to who should own up and cover the current symptoms."  (Plaintiff's Exh. 11.)  This "bickering" appears to lie at the heart of both this lawsuit and Baucom's Motion for Summary Judgment.

[5]      In its opposition brief, Sisco questions at some length whether plaintiff has identified defendant Pinnacle by the correct name.  (Sisco Brief (doc. 48), at 5.)  Be that as it may, neither plaintiff nor Pinnacle has raised this issue, and there appears to be neither a need for, nor any benefit from, this Court attempting to resolve at this time and on this record the proper name of the Pinnacle defendant.  The undersigned has every expectation that the parties will work together in good faith during the discovery process to ascertain whether the appropriate Pinnacle entity has been named and to take any action reasonably necessary to resolve this collateral question of the parties' proper names well in advance of trial.

Sisco.  (Baucom Aff., ¶ 2.)  Pinnacle is a temporary employment agency which provides temporary laborers to various employers, but which does not own, maintain, control or have custody of any vessel in navigation.  (Harvey Aff., ¶¶ 2-3.)  Simply put, Baucom was a Pinnacle employee on temporary assignment on the SISCO I when he hurt his back.  All parties are in full agreement that, although Baucom was working on a Sisco barge and under the direction of Sisco at the time of the December 2003 injury, he was an employee of Pinnacle at that time. (Plaintiff's Brief (doc. 37), at 6 ¶¶ 1, 2; Pinnacle Brief (doc. 47), at 2; Sisco Brief (doc. 48), at 1-2; Kinder Brief (doc. 46), at 5.)[6]

Tim S. Revels, M.D., one of Baucom's treating physicians, opined in a Clinic Note following an April 13, 2004 visit that the back injury sustained by Baucom in December 2003 was not an entirely new ailment, but rather constituted a "pulling and twisting injury of the back that has aggravated his lumbar degenerative disc disease which is a pre-existing finding but has been aggravated with the above injury."  (Sisco Exh. F, at 1.)[7]  Dr. Revels diagnosed plaintiff at that time with lumbar sprain/strain, lumbar degenerative disc disease, lumbar radiculopathy, and lumbar low back pain.  (*Id.* at 2.)

On May 12, 2004, a Functional Capacity Evaluation performed on Baucom yielded medical recommendations that he could "return to work within his demonstrated performance if approved by attending physician."  (Plaintiff's Exh. 4, at 2.)  Based on that evaluation and his own clinical observations, another of Baucom's doctors, Christopher Patton, M.D., opined on May 19, 2004 that "Baucom has reached maximum improvement," with "follow-up as needed" and immediate clearance to "return to work regular duty."  (Plaintiff's Exh. 5.)[8]  Dr. Patton

---

[6]      In light of the universal concurrence by the parties on these points, it is unnecessary to parse the terms of the contractual arrangements between Pinnacle and Sisco for confirmation of Baucom's status vis a vis those entities.

[7]      This conclusion is reinforced by the deposition testimony of Russell Hudgens, M.D., another of plaintiff's treating physicians, that Baucom has a diagnosis of degenerative disc disease in the lumbar spine and that it is a "probability" that such condition is long-standing. (Hudgens Dep., at 14.)

[8]      Again, this determination was echoed by Dr. Hudgens, who testified to his understanding, "based on the record, that [Baucom] was placed at maximum medical improvement with the 2003 injury."  (Hudgens Dep., at 33.)

further declared that Baucom's low back strain, lumbar spine strain and lumbar radiculopathy all were fully and completely "resolved," leaving him exclusively with a pre-existing degenerative disc disease of the lumbar spine.  (*Id.*)  Thus, Baucom was released to full duty by Dr. Patton, and returned to work as a crane operator beginning on May 20, 2004.  (Baucom Aff., ¶ 5.)[9]

Dr. Patton's May 2004 findings did not put an end to Baucom's medical treatment for back problems.  For example, Baucom reported to Dr. Patton for a follow-up visit on January 18, 2005, complaining of "severe stiffness" and demonstrating "[m]ild soreness to the lower lumbar spine."  (Plaintiff's Exh. 7.)  Plaintiff sought medical care again on April 15, 2005, complaining of lower back pain, neck pain and headaches after an excursion to the beach.  Dr. Patton's Clinic Note of that visit reflects an impression of degenerative disc disease of the lumbar spine (*i.e.*, Baucom's pre-existing back condition), and further indicates that Dr. Patton prescribed medication and physical therapy for plaintiff's lower back pain.  (Plaintiff's Exh. 8.)[10]  In general, however, Baucom's testimony was that "[a]s long as [he] took the anti-inflammatories, they pretty well kept everything in check" with regard to his back condition as of early 2005, although this pre-existing condition was gradually worsening over time.  (Baucom Dep., at 56.)

Baucom received compensation and medical benefits from Pinnacle's insurance company following the December 2003 injury, covering the cost of his treatment by Dr. Patton.  (Baucom Aff., ¶ 4.)  These benefits continued until Baucom reached maximum medical improvement and was released to return to unrestricted full duty in May 2004.

> **B.      The April 2005 Incident.**

After May 2004, when plaintiff was released to return to work, he resumed his duties as a crane operator, working for a series of employers.  Despite his return to full duty, Baucom

---

[9]      In his deposition, plaintiff testified that the nature of his work was intermittent, and that it was not unusual for him to work for several weeks then take two or three months off. (Baucom Dep., at 27.)  According to Baucom, he had worked "off and on" for Sisco for "many years through different companies and all."  (*Id.* at 31.)

[10]      Although not directly relevant to any issues presented in the Motion for Summary Judgment, Dr. Patton's April 15 clinic note also contains a statement expressing skepticism (or at least heightened attentiveness) that Baucom was complaining of back pain after a beach trip in which he had been quite active.  (*Id.*)

-4-

testified, he continued to have "a lot of problems ... [r]elated to the original injury." (Baucom Dep., at 62.) That said, he acknowledged that, notwithstanding those "problems," he was able to continue performing crane operator duties until April 2005. (*Id.* at 63.)

As of April 21, 2005, Baucom was employed by defendant Kinder Morgan Bulk Terminals, Inc. ("Kinder") as a crane operator on a floating crane barge in Tampa, Florida. (Baucom Aff., ¶ 3.) That evening marked plaintiff's first night on the job, assigned to that particular barge, and he had no work restrictions of any kind. (Baucom Dep., at 64, 103.) At that time, Baucom was attempting to shorten and tighten a cable onboard the barge when he felt a pop in his back, his hands began shaking, and he felt shooting pains and a burning sensation inside of his leg, prompting him to limp off the crane to seek medical care at Brandon Regional Hospital in Tampa. (*Id.* at 62, 72.) Baucom testified that the pain after the April 2005 incident was different than any he had experienced before because he felt a burning in the lower, outside part of his right leg, such that "it just felt like somebody was taking a frying pan and putting it up beside my leg; and I never had that before." (*Id.* at 103.) Ultimately, Baucom returned home to Mobile, Alabama, where he was placed under the care of several physicians for his ongoing back ailment.

On May 3, 2006, Dr. Revels (who had also examined Baucom after the December 2003 incident) wrote in a Clinic Note that Baucom suffered from lumbar degenerative disc disease, lumbar radiculopathy and lumbar low back pain, and that surgery was an option to address his symptoms. (Plaintiff's Exh. 11.) Dr. Revels opined in another Clinic Note that Baucom's need for surgery stems from, and is related to, the December 2003 incident; further, he specifically testified that it is more likely than not that the spinal surgery he now recommends for Baucom "is related to his 2003 accident and not related to the 2005 accident." (Revels Dep., at 6, 10.) According to Dr. Revels, the April 2005 incident aggravated pre-existing symptoms that Baucom had been experiencing, and was not a new injury. (*Id.* at 7-8, 13.) When asked point-blank in his deposition about causation, Dr. Revels testified, "I believe the 2003 injury is the ultimate injury that brought on the initial complex of symptoms. Even though he was rated and released ... and then had a subsequent injury that aggravated the primary subset of symptoms, it may have been to a worsening subjective state; but the symptoms were the same. The MRI findings were extremely similar. There were no objective changes found; therefore, these are aggravations of

the initial December 2003 injury." (*Id.* at 21.)[11]  Dr. Revels further testified that it is possible that any aggravation in Baucom's condition caused by the April 2005 incident has now resolved itself, such that Baucom's present condition is simply a natural progression of the back injury sustained in 2003.  (*Id.* at 10.)

Kinder's insurer paid for medical treatment and weekly compensation for Baucom from the time of the April 2005 incident until November 4, 2006, when all benefits were halted. (Baucom Aff., ¶¶ 5-6.)[12]  Kinder suspended these benefits on grounds of jurisdiction after determining based on discovery designed to allocate workers' compensation responsibilities among the various players (Kinder, Sisco, Pinnacle) that Baucom "has been deemed a Jones Act Seaman," rendering him ineligible for coverage under the Longshore and Harbor Workers' Compensation Act.  (Plaintiff's Exh. 1.)[13]  Kinder having determined that Baucom was a seaman to whom LHWCA benefits do not attach, Baucom initiated this lawsuit under the Jones Act and general maritime law seeking compensation and relief for his injuries.

## II.    Summary Judgment Standard.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

---

[11]     Dr. Revels' deposition testimony on these points echoes his Clinic Note dated May 3, 2006, wherein he characterized Baucom's condition as "the aggravation and his recurrence of symptoms which appear to be very similar in type of symptoms and grade and placement, etc. to his initial symptoms from his first injury. ... [H]e left his medical coverage open from his first injury, and this appears to be an aggravation of that subset of symptoms." (Plaintiff's Exh. 11.)

[12]     Records reflect that Kinder (by and through its insurance carrier) paid Baucom the sum of $1,000 per week in temporary total disability benefits during that time.  (Plaintiff's Exh. 1.)

[13]     Plaintiff does not quarrel with Kinder's assessment that he is a Jones Act seaman and therefore ineligible for benefits under the LHWCA.  *See, e.g., Bundens v. J.E. Brenneman Co.*, 46 F.3d 292, 300 (3rd Cir. 1995) ("a conclusion that a worker is a seaman necessarily precludes recovery under the LHWCA"); *Commercial Union Ins. Co. v. McKinnon*, 10 F.3d 1352, 1354 (8th Cir. 1993) (noting that, as a matter of law, Jones Act provides exclusive remedy for injuries to seaman in dredge accident, and that such injuries are not compensable under workers' compensation law); 33 U.S.C. § 902(3)(G) (excluding from LHWCA coverage "a master or member of a crew of any vessel," which would plainly encompass all seamen).

party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III.   Analysis.

### A.   Overview of the Law of Maintenance and Cure.

Although Baucom's Complaint is a multi-faceted affair, the only causes of action at issue for purposes of the Motion for Summary Judgment are those for maintenance and cure against each of the three defendants. "Under general maritime law, seamen are entitled to bring an action for 'maintenance and cure,' a remedy available to compensate seamen who fall ill or become injured during their term of employment." *Cabrera Espinal v. Royal Caribbean Cruises, Ltd.*, 253 F.3d 629, 630-31 (11th Cir. 2001) (citation omitted); *see generally Garay v. Carnival Cruise Line, Inc.*, 904 F.2d 1527, 1533 & n.7 (11th Cir. 1990) (pointing out that seaman's right to maintenance and cure dates back to ancient codes of the sea promulgated as far back as 1200 A.D.). "Maintenance" is "a living allowance" paid on a *per diem* basis, while "cure" is intended to "cover[] nursing and medical expenses." *Cabrera Espinal*, 253 F.3d at 631 (citation omitted); *see also Kasprik v. United States*, 87 F.3d 462, 464 (11th Cir. 1996) ("It is a well recognized rule in admiralty that when a seaman is injured or becomes ill while employed aboard a vessel, he is entitled to daily subsistence and medical treatment until his maximum cure

has been reached.").[14]  Additionally, "it is settled law that wages is a basic component of an award of maintenance and cure." *Flores v. Carnival Cruise Lines*, 47 F.3d 1120, 1122 (11th Cir. 1995) (citation omitted).  The obligation to pay maintenance and cure continues until such time as the seaman has reached the point of maximum cure.  *See Nichols v. Barwick*, 792 F.2d 1520, 1523 (11th Cir. 1986); *Gooden v. Sinclair Refining Co.*, 378 F.2d 576, 579 (3rd Cir. 1967) ("The obligation to provide maintenance and cure continues until maximum medical recovery has in fact been achieved.").

        The maintenance and cure remedy has been construed expansively in light of its remedial purposes of protecting the safety and health of "poor and friendless" seamen, and inducing seamen to accept sea duty despite its many intrinsic perils.  *Flores*, 47 F.3d at 1123 (noting the "traditional breadth of the remedy" and that any ambiguities and doubts are resolved in favor of the seaman); *see also Cabrera Espinal*, 253 F.3d at 631 (observing that "a ship owner's liability for maintenance and cure is among the most pervasive and should not be defeated by narrow or restrictive distinctions").  "The duty to provide maintenance attaches once the seaman enters the service of the ship." *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 279 (5th Cir. 2007) (citation omitted).  Where they are owed, "[m]aintenance and cure are due without regard to the negligence of the employer or the unseaworthiness of the ship." *Kasprik*, 87 F.3d at 464 (citation omitted); *see also Adams v. Texaco, Inc.*, 640 F.2d 618, 620 (5th Cir. 1981) ("The shipowner's obligation to pay maintenance and cure to an injured seaman is not based on fault but results from the relationship of ship and seaman."). "Even if the seaman is injured through his own negligence, he does not forfeit his right to maintenance and cure," as long as the injury is not the product of the seaman's wilful misconduct.  *Garay*, 904 F.2d at 1529.  In the ordinary case, all a seaman must prove in order to establish a right to maintenance and cure is "that the injury or illness arose during his employment; no causal connection to his duties need be shown." *Liner v. J.B. Talley and Co.*, 618 F.2d 327, 332 (5th Cir. 1980).  Such a light burden is consistent with the notion that this doctrine was crafted so that a seaman's right to maintenance

---

        [14]        Of no small significance, "a shipowner's duty to pay maintenance and cure encompasses a duty to guarantee payment prior to treatment for all reasonable medical expenses." *Sullivan v. Tropical Tuna, Inc.*, 963 F. Supp. 42, 45 (D. Mass. 1997).

and cure "is so inclusive as to be relatively simple, and can be understood and administered without technical considerations." *Flores*, 47 F.3d at 1123 (citation omitted).

It is exceedingly clear from these authorities that the duty of a ship owner to pay maintenance and cure to an injured seaman who has not reached maximum medical improvement is virtually automatic. That said, each of the three defendants has propounded a host of individual-specific arguments in support of its position that, whatever maintenance and cure obligations may or may not be owed by other defendants, that defendant owes no such liability to Baucom.[15]

### B.    Maintenance and Cure Obligations of Kinder.

As mentioned, the Amended Complaint identifies separate causes of action against each defendant for maintenance and cure. (*See* Amended Complaint (doc. 31), at Counts One, Two, and Four.) While Baucom seeks summary judgment from all defendants on this issue, his Rule 56 submissions are primarily directed at Kinder. Indeed, Baucom's Motion sets forth his contention "that Kinder is responsible for maintenance and cure with a right of contribution against Pinnacle." (Motion, at 2.)[16] It is unclear from the Motion how Baucom contends that

---

[15]    In his Reply Memorandum (doc. 52), plaintiff characterizes the opposition briefs as essentially agreeing that he is entitled to maintenance and cure, but simply debating which defendant bears financial responsibility. Indeed, plaintiff writes that "a reading of the oppositions will reveal that the defendants do not genuinely challenge his entitlement to maintenance and cure." (Reply, at 1.) This is not correct. For example, Pinnacle and Sisco both assert that no maintenance and cure obligations could arise from the 2003 incident because Baucom was not a seaman and the SISCO I was not a vessel in navigation. (Pinnacle Brief, at 5-10; Sisco Brief, at 2.) Moreover, Kinder denied that Baucom was owed maintenance and cure at all. (Kinder Brief, at 5, 9, 10.) Kinder filed a Motion for Leave to File Sur-Reply (doc. 54) for the sole purpose of reiterating that point. Although such reiteration is unnecessary because Kinder's position is clear from its original brief, the Motion for Leave to File Sur-Reply (doc. 54) is **granted** in the Court's discretion. Kinder's Sur-Reply attached as an exhibit to document 54 will be considered for whatever marginal value it may have.

[16]    An initial concern with this view of the case is that Kinder has failed to assert cross-claims against Pinnacle for contribution. To be sure, courts generally recognize a right to contribution in the maintenance and cure context. The Eleventh Circuit has explained, albeit in a fact situation different from the case at bar, that "the *only* way to apportion the cost of maintenance and cure among all tortfeasors responsible for the harm to seamen is to allow claims for contribution." *Great Lakes Dredge and Dock Co. v. Tanker Robert Watt Miller*, 92 F.3d

SISCO (which apparently was not plaintiff's employer in December 2003) fits into the maintenance and cure relief he seeks.

In response, Kinder does not argue that Baucom did not qualify as a seaman as of April 2005, that the Kinder vessel on which the second accident occurred was not a vessel in navigation, that Baucom's injuries were caused by his own wilful misconduct, or the like. Indeed, Kinder does not contest the existence of any of these prerequisites for maintenance and cure; rather Kinder's defense to the Motion for Summary Judgment hinges on two arguments regarding the back injuries sustained by Baucom. First, Kinder maintains, Baucom is not entitled to summary judgment on the maintenance and cure claim because there are genuine issues of fact as to whether the condition for which he seeks maintenance and cure benefits is a pre-existing condition that did not arise from his employment with Kinder. Second, Kinder argues that Baucom's Rule 56 Motion should be denied because there are genuine issues of fact as to whether Baucom has reached maximum medical improvement from the April 2005 injury.

Upon careful review of the parties' submissions, the undersigned agrees that the record is not sufficiently developed to support entry of summary judgment against Kinder on the maintenance and cure question. To be sure, there is no disagreement that Baucom strained his back on April 21, 2005 while working aboard the Kinder vessel; and that this occurrence aggravated a previous condition. The problem, however, is that Baucom would apparently have this Court assume that the proposed back surgery which forms the impetus for these maintenance and cure claims arises from or is otherwise related to the April 2005 incident, rather than the December 2003 incident. The evidence of record does not warrant any such assumption; indeed, Dr. Revels, the orthopedic surgeon who is actually recommending this surgery, testified to his

---

1102, 1107 (11th Cir. 1996) (recognizing "binding precedent allowing contribution claims based on maintenance and cure expenses"); *see also Adams*, 640 F.2d at 621 ("Under the 'commonsense principle' that a party whose neglect has in part contributed to the need for maintenance and cure payments, that party should reimburse the costs of those payments to the extent occasioned by its fault."). But Kinder's Answer (doc. 23) is devoid of any claims for contribution, and the deadline for amending pleadings expired on April 16, 2007. (Scheduling Order (doc. 35), at ¶ 5.) As such, no contribution claim by Kinder against Sisco and/or Pinnacle has been joined in this litigation, and any attempt to do so now would be violative of the Scheduling Order.

opinion that the surgery Baucom now needs "is related to his 2003 accident and ***not related to the 2005 accident***."  (Revels Dep., at 10 (emphasis added).)  Where, then, is plaintiff's evidence that his need for back surgery, which apparently precipitated his claims for maintenance and cure, arises from or is in any way related to the April 2005 accident?  It is not in the record for summary judgment.  Contrary to Baucom's apparent view, the maintenance and cure duty does not obligate Kinder to pay for any back treatment he may ever need for the rest of his life irrespective of its connection (or lack thereof) to the events of April 2005.

The shortcomings in plaintiff's Rule 56 Motion against Kinder do not end there.  The law is clear that the obligation to provide maintenance and cure "is not an open-ended duty," but rather expires "at the point of maximum cure."  *Belcher Towing Co. v. Howard*, 638 F. Supp. 242, 243 (S.D. Fla. 1986); *see also Norfolk Dredging Co. v. Wiley*, 450 F. Supp.2d 620, 622 (E.D. Va. 2006) ("The shipowner's obligation lasts until such time as the seaman reaches maximum medical improvement."); *Whitman v. Miles*, 294 F. Supp.2d 117, 123 (D. Me. 2003) (opining that maintenance and cure does not hold a ship to permanent liability for a pension, and that obligation ceases once disabling condition has been deemed incapable of being improved, irrespective of need for continuing medical treatment and care).  "'Maximum medical cure' is reached when the seaman recovers from the injury, the condition permanently stabilizes or cannot be improved further."  *McMillan v. Tug Jane A. Bouchard*, 885 F. Supp. 452, 459 (E.D.N.Y. 1995).  "[I]f the seaman thereafter needs attention to maintain his improvement at the maximum, to assist him in recovery from relapses, or to restrain the progress of the disease, the shipowner is not bound to provide that."  *Id.* at 461 (citation omitted); *see also Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979) ("The accepted legal standard holds that maximum cure is achieved when it appears probable that further treatment will result in no betterment of the seaman's condition."); *Saco v. Tug Tucana Corp.*, --- F. Supp.2d ----, 2007 WL 1054721, *6 (D. Mass. Mar. 30, 2007) (distinguishing between treatment that actually improves the medical condition, which is covered by maintenance and cure, and simply palliative care, which is not, but allowing that the boundary separating those categories is often "fuzzy").  Thus, if further treatment would merely relieve pain and suffering but not improve the seaman's underlying physical condition, the point of maximum cure has been reached.  *See In re RJF Int'l Corp. for Exoneration from or Limitation of Liability*, 354 F.3d 104, 106 n.1 (1st Cir. 2004).

-11-

In light of these authorities, if Baucom has attained maximum medical cure with respect to the April 2005 incident, then Kinder owes him no duty of maintenance and cure.[17]  The summary judgment record raises considerable questions as to whether maximum medical cure has been reached with respect to that event.  In particular, Dr. Hudgens testified that as of November 22, 2005, Baucom "had reached maximum medical improvement as of the April 2005 injury, concerning my treatment."  (Hudgens Dep., at 33.)  Similarly, Dr. Revels testified that it is possible that any aggravation of Baucom's back condition arising from the April 2005 incident has resolved itself, such that his current condition is simply a natural progression of his back ailments that predated the April 2005 incident.  (Revels Dep., at 10.)  Against this medical testimony by his own physicians, plaintiff simply states in conclusory terms, with no record citations, that "Mr. Baucom has not reached maximum cure following the April 21, 2005, incident."  (Plaintiff's Brief, at 11.)  But on what evidence is that blanket statement based?  To be sure, the record reflects that Baucom continues to experience back pain and that Dr. Revels is recommending surgery.  But the concepts of maximum medical improvement and continued back discomfort are in no way mutually exclusive.  The Court cannot blithely assume that maximum cure as to the April 2005 incident has not been reached simply because plaintiff continues to experience back problems.  Further, as already pointed out above, no medical evidence or physician testimony in the record links Baucom's back pain today and his need for surgery today to the April 2005 incident, as opposed to his longstanding degenerative disc disease or his December 2003 back injury.

If the Court understands plaintiff's position correctly, it is that Baucom is entitled to maintenance and cure from Kinder because he hurt his back on Kinder's vessel, Kinder's vessel was the "last ship" on which his back injuries occurred, and he continues to have back pain

---

[17]      In addressing whether Baucom has reached maximum medical improvement with regard to the April 2005 injury, Kinder bears the burden of demonstrating that maximum cure has been reached.  After all, "[o]nce the seaman establishes his right to maintenance and cure, the burden of persuasion shifts to the shipowner to prove that the seaman has reached the point of maximum medical improvement."  *Costa Crociere, S.p.A. v. Rose*, 939 F. Supp. 1538, 1548 (S.D. Fla. 1996); *see also Smith v. Delaware Bay Launch Service, Inc.*, 972 F. Supp. 836, 848 (D. Del. 1997); *McMillan*, 885 F. Supp. at 459.

today.[18]  But the fact that Baucom aggravated his back condition on Kinder's vessel does not transform Kinder into a lifetime guarantor for all medical expenses relating to treatment of Baucom's back for time immemorial.  If the treatment being sought is unrelated to the April 2005 incident, as competent medical testimony in the record suggests, then Kinder's maintenance and cure obligations do not reach it.  If Baucom has reached maximum medical improvement from the April 2005 incident, as competent medical testimony in the record also suggests, then Kinder's maintenance and cure obligations have terminated altogether, irrespective of any ongoing back problems that plaintiff may experience.  To rule otherwise would be to reinterpret the doctrine of maintenance and cure as a mandatory lifetime health insurance policy for injured seamen.  Courts have emphatically, consistently rejected such overreaching of this hoary maritime doctrine.  *See, e.g., Norfolk Dredging*, 450 F. Supp.2d at 626 ("Maintenance and cure was not intended as a pension or disability plan.").[19]

          In short, then, the summary judgment record is rife with genuine questions of material fact as to whether Baucom has reached maximum cure with respect to the back strain incurred in the April 2005 incident, whether the contemplated treatment relates to the April 2005 incident, and whether the contemplated treatment is mere palliative care outside the realm of any

---

          [18]     It is difficult to ascertain precisely what plaintiff's position is on this point, inasmuch as plaintiff elected not to address Kinder's substantive arguments in his reply brief. Hence, the Court has the benefit of neither argument nor evidence that Baucom might use to rebut Kinder's showing concerning maximum medical improvement and the relationship between the April 2005 accident and the contemplated surgery.

          [19]     *See also Stevens v. McGinnis, Inc.*, 82 F.3d 1353, 1357 (6th Cir. 1996) (where seaman suffers from disease manifested during his employment, but not caused by employment, shipowner has no obligation to support the ill seaman for life, but need only expend such funds as necessary to put seaman in such condition as reasonably may be expected to result from nursing, care and medical treatment); *Boudreau v. S/V Shere Khan C*, 27 F. Supp.2d 72, 83 (D. Me. 1998) (noting that a "sailor unable to make a full recovery does not receive a lifetime's maintenance and cure"); *Smith*, 972 F. Supp. at 848 (injured seaman is not entitled to maintenance for the rest of his life); *Bonneau v. Guidance Fishing Corp.*, 919 F. Supp. 46, 48 (D. Mass. 1996) (maintenance and cure does not hold a ship to permanent liability for a pension); *Tran v. Captain Glyn, Inc.*, 909 F. Supp. 727, 733 (D. Haw. 1995) (observing that even the broad liability imposed by maintenance and cure doctrine must have a temporal and spacial limit, without creating indefinite obligation to shipowner).

maintenance and cure duty the employer might have.[20]  For these reasons, plaintiff is not entitled to entry of summary judgment in his favor with respect to his maintenance and cure claim posited against defendant Kinder.

       **C.**    ***Maintenance and Cure Obligations of Sisco and Pinnacle.***

       Defendants Sisco and Pinnacle also proffer a host of arguments to support their respective positions that they are not responsible for any ongoing maintenance and cure obligations to Baucom.  These arguments vary widely in persuasiveness.[21]

-----

[20]      On this last point, even if plaintiff has not reached maximum medical improvement with respect to the April 2005 accident, and even if the contemplated surgery is related to the April 2005 incident, it is unclear whether that treatment is merely palliative care designed to reduce pain and suffering (and therefore beyond the scope of any cure obligation) or whether it is actually likely to better his physical condition (so as to be compensable under the cure obligation).  *See, e.g., Pelotto*, 604 F.2d at 400 (treatment that will merely relieve pain and suffering without otherwise improving seaman's physical condition is not compensable under maintenance and cure framework).  Without a showing from plaintiff concerning the purpose and likely effect of the contemplated surgery, the Court cannot find that payment for same lies within any cure obligation that Kinder might otherwise be found to have.  Courts scrutinize medical expenses carefully to assess whether they are both bona fide and reasonable, inasmuch as seamen are not entitled by maintenance and cure principles to reimbursement for overly expensive or unnecessary medical services.  *See Matter of Cooper / T. Smith Stevedoring Co.*, 942 F. Supp. 267, 269 (E.D. La. 1996) (finding that plaintiff was entitled to payment of medical expenses by shipowner for treatment procedures, only where evidence showed that contemplated treatments would increase his capabilities and improve his physical condition).

[21]      For example, Pinnacle argues (and Sisco at least tacitly joins the argument) that Baucom cannot be considered a seaman for maintenance and cure purposes.  "The right to maintenance and cure is ... limited to seamen."  *Stokes v. B.T. Oilfield Services, Inc.*, 617 F.2d 1205, 1206 (5th Cir. 1980).  To qualify as a "seaman" who may be eligible for maintenance and cure, a claimant must satisfy the following elements: (1) the employee's duties must contribute to the function of the vessel or accomplishment of its mission; and (2) the seaman must have a connection to a vessel in navigation that is substantial in terms of both duration and nature.  *See, e.g., Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 785 (9th Cir. 2007); *Holmes v. Atlantic Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006).  In response to the contention that Baucom was not a seaman because he was a "land based worker" with mere "transitory" duties on the SISCO I (Pinnacle Brief, at 9), plaintiff presents uncontroverted deposition testimony that he had been assigned to the SISCO I for a period of six months at the time of his injury; that he was working, eating, sleeping and generally living on the barge during that time period; and that the vessel sailed from Mobile to New Orleans and back again from time to time to perform its function of loading and offloading cargo.  (Baucom Dep., at 44-45.)  Pinnacle's characterization of

-14-

In order to resolve the pending Motion for Summary Judgment, it suffices to consider plaintiff's Uncontested Fact #7, to-wit: "Mr. Baucom reached maximum medical improvement for the December 8, 2003, injury on May 19, 2004." (Plaintiff's Brief (doc. 37), at 6.)  As set forth above, the law is clear that a shipowner's obligation to pay maintenance and cure terminates when a seaman reaches maximum cure.  *See, e.g., Nichols*, 792 F.2d at 1523; *Norfolk Dredging*, 450 F. Supp.2d at 622; *Whitman*, 294 F. Supp.2d at 123.  Given Baucom's concession in his Motion that he reached maximum cure from the December 2003 incident in May 2004, Pinnacle and Sisco convincingly argue that they can have no maintenance and cure obligations following May 2004 because the maximum cure date marks the terminus of that obligation.  As it further appears undisputed that Pinnacle and/or Sisco did pay benefits to Baucom through May 2004, and as Baucom is not apparently contending that those payments were inadequate in any way, it is difficult to understand how he would extend the maintenance and cure duty past that acknowledged maximum cure date.  Moreover, Baucom undermines his own cause by failing to respond to this argument in his reply brief, leaving the Court to guess what legal basis Baucom might invoke for attempting to prolong any maintenance and cure obligations that Pinnacle or Sisco might have had past the admitted May 2004 maximum cure date.[22]  The Court will neither make plaintiff's arguments for him nor grant summary judgment based on unarticulated theories that have not been properly developed in the briefs and the record in this case.

---

Baucom's status with respect to SISCO I is difficult to fathom, and appears directly contrary to the evidence of record.  The same applies to Pinnacle's contention that the SISCO I should not be deemed a "vessel" for Jones Act purposes.  Absent some evidentiary showing that has not been made here, these kinds of arguments border on frivolity and serve only to distract scarce judicial resources from the *bona fide* issues in dispute.

[22]     Such arguments might or might not exist.  For example, certain courts have found that a determination of maximum cure is not necessarily the cutoff of all possible recourse for maintenance and cure, but that a seaman "can try again and recover further benefits if he can persuade judge or jury that, because of changes in his own condition or advances in the medical art, there is now a possibility of further improvement." *Bonneau*, 919 F. Supp. at 48 (citation omitted); *see also Pelotto*, 604 F.2d at 401 ("seamen have always been accorded the right to bring serial suits to collect maintenance payments as they come due").  But Baucom has never contended (much less presented evidence) that his May 2004 maximum medical improvement determination was incorrect, or that it has been superseded by subsequent changes in his condition, such that he is not at maximum cure from the December 2003 incident today.

Simply put, then, because Baucom states as an undisputed fact that he reached maximum cure from the December 2003 incident in May 2004, it appears unlikely that any maintenance and cure obligations of Pinnacle and Sisco can survive to the present time. For that reason, plaintiff's Motion for Summary Judgment is **denied** as to defendants Pinnacle and Sisco.[23]

## IV.   Conclusion.

The Court understands and appreciates Baucom's predicament. He needs back surgery, which apparently will not happen until or unless one or more defendants pays for it, either voluntarily or by court order. But his summary judgment showing is inadequate to establish a duty on the part of any defendant to pay for that procedure as part of a maintenance and cure obligation. If Baucom wants Kinder to bear legal responsibility for it, then he must make a showing that he has not reached maximum medical improvement from the April 2005 incident and that the contemplated surgery arises from or relates to the April 2005 incident in some way. He has done neither; rather, extant medical testimony is that Baucom's need for surgery is not related to the April 2005 incident at all, but is instead a result of a previous back problem. If Baucom wants Sisco and/or Pinnacle to bear legal responsibility for this surgery, then he must make a showing that he has not reached maximum medical improvement from the December 2003 incident. He has not done so, but instead has acknowledged that he reached maximum cure from that incident in May 2004, which has the legal effect of terminating his right to maintenance and cure from those defendants. If, however, the contemplated back surgery is required to ameliorate a long-standing, pre-existing condition of degenerative disc disease in the spine, not related to either the December 2003 incident or the April 2005 incident, and if the December 2003 and April 2005 conditions have resolved (as at least some record evidence suggests), then the proposed surgery is not a proper subject for maintenance and cure at all. Further factual development is needed before a definitive ruling may be made on these issues.

---

[23]    In so concluding, the Court recognizes that Sisco has filed a Motion (doc. 53) seeking leave to file a sur-reply, the general thrust of which is that Baucom's reply fails adequately to respond to Sisco's arguments against summary judgment. Although that clarification is unnecessary, given that the Court can readily perceive the deficiencies in plaintiff's reply simply by reading said reply, in its discretion the Court **grants** the Motion and will consider the Sur-Reply for whatever marginal value it may have.

For all of these reasons, it is hereby **ordered** as follows:

1.      Plaintiff's Motion for Summary Judgment on the Issue of Maintenance and Cure (doc. 36) is **denied**.[24]

2.      Sisco's Motion to File Response to Plaintiff's Reply Memorandum (doc. 53) and Kinder's Motion for Leave to File Sur-Reply Memorandum (doc. 54) are **granted**.

DONE and ORDERED this 14th day of June, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[24]      Of course, nothing here forecloses the possibility that Baucom may recover further damages for wrongful denial of maintenance and cure benefits if it is ultimately determined that one or more defendants in fact are legally responsible to pay maintenance and cure.  *See Hines v. J.A. LaPorte, Inc.*, 820 F.2d 1187, 1190 (11th Cir. 1987) ("Seamen have a claim for compensation for the suffering and for the physical injury which follow when the failure to give maintenance and cure aggravates the illness."); *In re Complaint of J.A.R. Barge Lines, L.P.*, 307 F. Supp.2d 668, 670 (W.D. Pa. 2004) (similar); *Sullivan*, 963 F. Supp. at 46 ("It is well-settled that a seaman may recover compensatory damages such as pain and suffering stemming from a shipowner's unreasonable failure to pay maintenance and cure.").