IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERT C. BAUCOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 06-0785-WS-B |
| | ) | |
| SISCO STEVEDORING, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter comes before the Court on the Trial Briefs (docs. 122, 127) filed by the parties on the discrete issues of whether the SISCO I constitutes a vessel for Jones Act purposes and whether Baucom qualifies as a seaman, and whether there are any genuine issues of material fact that require those issues to be litigated at trial.[1]

I.    **Relevant Factual Background.**[2]

_____

[1]    These types of predominantly legal considerations are tailor-made for resolution by the Court as a matter of law, particularly given the paucity of material factual disputes recited in the parties' evidentiary submissions. By not moving for partial summary judgment on these threshold legal questions within the time parameters established by the applicable Rule 16(b) Scheduling Order, the parties have done both themselves and this Court a disservice by forcing these issues to be resolved via expedited briefing and ruling on the precipice of the February 12, 2008 trial setting. To the extent that the parties have been disadvantaged by their eleventh-hour presentation of these issues, they themselves bear sole responsibility.

[2]    These issues are not technically presented under a Rule 56 summary judgment rubric; nonetheless, the nature of Pinnacle/Sisco's argument that they are exempted from liability as a matter of law because Baucom is not a Jones Act seaman closely resembles a motion for summary judgment. Likewise, Baucom's position that he is a Jones Act seaman as a matter of law is conspicuously akin to a cross-motion for summary judgment. Moreover, the briefing schedule for these trial briefs specifically directed the parties to submit the record evidence on which their positions were founded. (Doc. 113, at 1-2.) The Court will therefore analyze these trial briefs as if they were cross-motions for summary judgment, meaning that with respect to each party's arguments on these legal issues, the other side's evidence will be taken as true and all justifiable inferences will be drawn in that party's favor. *See generally Skop v. City of*

This lawsuit arises in part from events that occurred on December 8, 2003 when plaintiff, Robert C. Baucom, was working as a crane operator aboard a watercraft called the SISCO I, which was floating on the Mobile River in Mobile, Alabama.  Defendants Pinnacle Marine Employee Management and Sisco Stevedoring, LLC (collectively, "Pinnacle/Sisco") are alleged to have been Baucom's employer at that time.  Baucom brings claims against Pinnacle/Sisco under Jones Act, unseaworthiness, and maintenance and cure theories.  In their trial briefs, the parties debate whether Baucom is a seaman and whether the SISCO I is a vessel, both of which are prerequisites for liability on these claims.  Thus, the nature of the watercraft and Baucom's duties aboard same are of central importance to the legal issues identified in the parties' trial briefs.  These facts are not disputed in any material respects.

Examining facts concerning the watercraft first, and taking those facts in the light most favorable to Pinnacle/Sisco, the SISCO I is a 580-foot long "floating derrick crane" or barge that was moored to the Mobile River Terminal during the relevant time period.  (Baucom Dep., at 44; Laskey Dep., at 19.)  The SISCO I's function was to load and unload cargo from ships at the terminal, and it was tied off to the dock or to the ship being serviced while performing that function.  (*Id.*; Mallon Aff., ¶ 7; Baucom Dep., at 45.)[3]  Its crew consisted of two crane operators and four deckhands.  (Hayes Dep., at 14.)  The SISCO I does not have any means of self-propulsion, but is moved from place to place via tug boat, or "push boat."  (Laskey Dep., at 24;

_____

*Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007) (reciting well-worn proposition that district court is obligated under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party).  The vast majority of the facts presented by the parties on these issues are undisputed; indeed, by all appearances the parties could most efficiently have submitted the questions of vessel and seaman status to the undersigned on stipulated facts.

[3]      One witness testified as follows concerning the SISCO I:

"Q:     So it has bits and thimbles so it can be tied up to docks, which you just said.
"A:     Yes.
"Q:     It's periodically tied up to vessels when offloading operations are being conducted; correct?
"A:     Yes."

(Hayes Dep., at 26.)

Mallon Aff., ¶ 3.)  From time to time, the SISCO I would float down the Mobile River (with the assistance of a tugboat) to the Blakely Terminal to perform its cargo loading/unloading functions.  (Laskey Dep., at 24-25.)  The SISCO I has also floated to Mississippi and to New Orleans on occasion to perform those functions.  (Hayes Dep., at 25; Baucom Dep., at 45.)  When the SISCO I is moved to the Mississippi River or other locations, it is pushed by tugboats through inland waterways.  (Elliott Dep., at 19-20.)  In general, the SISCO I does not move from area to area very often.  (Hayes Dep., at 27.)  Sisco's estimate is that the SISCO I floated down the river from the Mobile River Terminal to the state docks a total of 8 to 10 times in 2003. (Mallon Aff., ¶ 9.)  At the time of Baucom's accident, the SISCO I was physically capable of being moved (*i.e.*, it was not in drydock, had not been permanently removed from service, and was not permanently secured at its location).  (Elliott Dep., at 20-21.)  The watercraft has neither bilge pumps nor navigational lights, but it does have a raked bow and living quarters for the crew.  (Laskey Dep., at 21, 24; Hayes Dep., at 25-26, 29.)

With respect to Baucom, at the time of the accident he was employed on the SISCO I as one of two crane operators, with responsibility for operating the crane and assisting with maintenance of that crane.  (Baucom Dep., at 8.)  Baucom and the other crane operator worked in alternating six-hour shifts, and remained on board the SISCO I for 24 hours each day.  (*Id.* at 8, 40.)  Baucom ate, slept, and showered onboard the SISCO I using its living quarters, and was required by his employer to do so.  (*Id.* at 44-5; Laskey Dep., at 25-26.)[4]  At the time of the

---

[4]      In its trial brief, Pinnacle/Sisco asserts that "the testimony of Matt Mallon and Aaron Elliott to be presented at trial will establish that [Baucom] was not required to stay aboard the SISCO I in between his six hour shifts."  (Doc. 122, at 7.)  However, none of the evidentiary materials appended to that trial brief support that contention.  Curiously, Pinnacle/Sisco submitted an Affidavit of Matt Mallon dated January 22, 2008 (the same date as its trial brief was filed), but neglected to include any such allegation therein.  It is fundamental that the unadorned representations of counsel cannot create genuine issues of material fact.  *See, e.g., Nieves v. University of Puerto Rico*, 7 F.3d 270, 276 (1st Cir. 1993) ("Factual assertions by counsel in motion papers, memoranda, briefs, or other such 'self-serving' documents, are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment."); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) ("opinions, allegations, and conclusory statements of counsel do not substitute for evidence").  Besides, whether it was a mandatory job requirement or not, the uncontroverted evidence is that Baucom in fact routinely ate, slept and showered onboard the SISCO I, and

accident, Baucom had been assigned to the SISCO I for approximately six months.  (Baucom Dep., at 44.)

II.     **Analysis.**

  A.     ***Appropriate Legal Standard.***

  Whether an employee qualifies as a seaman "is a mixed question of law and fact." *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997).  Summary judgment on the question of seaman status "is mandated where the facts and the law will reasonably support only one conclusion."  *Id.* (citing *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)) *see generally Chandris, Inc. v. Latsis*, 515 U.S. 347, 371, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) (noting that summary judgment should be granted "where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation").

  B.     ***Was the SISCO I a Vessel Under the Jones Act?***

   1.     *Legal Test for Determining Vessel Status under the Jones Act.*

  The relevant legal principles are well-settled and uncontroversial.  A worker must satisfy the following criteria to qualify for seaman status under the Jones Act: (1) "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission"; and (2) "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and its nature."  *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 785 (9th Cir. 2007) (citation omitted); *see also Holmes v. Atlantic Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006) (same).  "The existence of a vessel is a fundamental prerequisite to Jones Act jurisdiction and is at the core of the test for seaman status."  *Holmes*, 437 F.3d at 446.  A focal point of the parties' trial briefs on the issue of seaman status is whether the SISCO I constitutes a "vessel" for purposes of that Jones Act test.

  The linchpin decision on this issue is *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005), wherein the Supreme Court clarified the meaning of the

routinely spent 24 hours per day aboard the watercraft, during the six-month period preceding the accident.

term "vessel" for Jones Act purposes.[5]  The *Stewart* Court set forth the following principles for determining whether a watercraft is or is not properly deemed a vessel: (1) the watercraft need only be "used, or capable of being used, as a means of transportation on water to qualify as a vessel"; (2) there is no requirement "that a watercraft be used *primarily* for that purpose"; (3) "a watercraft need not be in motion to qualify as a vessel," such that "a watercraft [does not] pass in and out of Jones Act coverage depending on whether it was moving at the time of the accident"; (4) "structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time"; and (5) "[t]he question remains in all cases whether the watercraft's use as a means of transportation on water is a practical possibility or merely a theoretical one." *Stewart*, 543 U.S. at 495-96.

This Court derives guidance from three appellate decisions applying the Supreme Court's definition of "vessel" to unconventional watercraft in the Jones Act context.  First, there is *Stewart* itself.  *Stewart* involved the SUPER SCOOP, a floating dredge used to dig the trench beneath Boston Harbor that became the Ted Williams Tunnel in Boston's well-publicized "Big Dig" project.  The Supreme Court described the SUPER SCOOP as "a massive floating platform from which a clamshell bucket is suspended beneath the water," with the function of the bucket being to remove silt and sediment from the ocean floor and dump same on a scow that floated

---

[5]     It could be argued that *Stewart* has no bearing on the Jones Act and that the Supreme Court was defining the term "vessel" only for purposes of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), not for the Jones Act.  Such an argument has superficial appeal, as the Court wrote, "We granted certiorari to resolve confusion over how to determine whether a watercraft is a vessel for purposes of the LHWCA."  543 U.S. at 486.  But a close reading of *Stewart* confirms that its discussion of "vessel" was not confined the LHWCA but would apply with equal force in the Jones Act context.  In *Holmes*, 437 F.3d 441, the Fifth Circuit performed a careful analysis of the text and holding of *Stewart* and concluded that "[i]t is clear, then, that *Stewart* defines a 'vessel' for purposes of both the Jones Act and the LHWCA." *Id.* at 448; *see also Bunch v. Canton Marine Towing Co.*, 419 F.3d 868, 871-74 (8th Cir. 2005) (applying *Stewart* definition of vessel for purposes of Jones Act claim); *Stewart v. Dutra Const. Co.*, 418 F.3d 32, 34-35 (1st Cir. 2005) (on remand from Supreme Court, applying *Stewart* holding and principles to "vessel" inquiry for Jones Act claim, and opining that a close reading of the Supreme Court opinion makes clear that the definition applies equally to both the LHWCA side of the coin and the Jones Act side of the coin).  The Court expressly adopts the reasoning of these appellate decisions in applying the *Stewart* holding to the Jones Act claims presented here.

alongside the dredge. 543 U.S. at 484. This watercraft had a captain and crew, navigational lights, ballast tanks, and a crew dining area, but had "only limited means of self-propulsion" such that it was moved long distances by tugboat while "navigat[ing] short distances by manipulating its anchors and cables." *Id.* The *Stewart* Court concluded that the SUPER SCOOP was a vessel, as a matter of law, because it was unquestionably capable of being used as a means of transportation on water (indeed, the ability to traverse the Boston Harbor was integral to its function of digging the Ted Williams Tunnel), and it had not been taken out of service, permanently anchored, or otherwise rendered practically incapable of maritime transport at the time of the injuries in question. *See id.* at 495-97.

Second, the Court finds instructive the Fifth Circuit's analysis in *Holmes v. Atlantic Sounding Co.*, 437 F.3d 441 (5th Cir. 2006). The watercraft in *Holmes* was the BT-213, which was "in effect, a floating dormitory, a barge on the deck of which a two-story, 50-bed 'quarters package' is mounted," with the barge moving from place to place to house and feed employees during dredging projects. *Id.* at 443. The BT-213's "crew" was limited to two cooks and two janitors, and it was towed by tugboat between project locations. As the *Holmes* panel summarized, "It is incapable of self-propulsion; has no captain, engineer or deckhand; has no bilge pumps or wing tanks; and has never been off-shore." *Id.* at 444. Notwithstanding these facts, the Fifth Circuit announced that "[c]onsistent with *Stewart*'s expanded definition of that term, we have no trouble concluding that the BT-213 is a vessel" for Jones Act purposes. *Id.* at 448. The *Holmes* court explained that the BT-213 was practically capable of maritime transportation because it moved from shore to dredge site and from dredge site to dredge site multiple times per year; that the watercraft was moored only temporarily at the time of the accident; and that, while the BT-213 was totally incapable of self-propulsion, that factor did not disqualify it from "vessel" status under the *Stewart* framework. *Id.* at 448-49.

A third helpful appellate decision on this narrow issue is *Bunch v. Canton Marine Towing Co.*, 419 F.3d 868 (8th Cir. 2005), which involved a "cleaning barge" moored to the bed of the Missouri River by spud poles (long posts placed vertically through the barge's hull and embedded into the river floor). The cleaning barge was generally secured in position, and lacked propellers or other means of moving itself. Occasionally the barge would be moved from the Illinois side of the river to the Missouri side of the river, or vice versa. Following *Stewart*, the

*Bunch* court concluded, "We hold the cleaning barge was a vessel ... under the Jones Act. ... The undisputed facts of this case do not show the cleaning barge was permanently moored or anchored to the river bed, and the barge had been moved from its mooring to travel across the river during the time Bunch worked for Canton. ... Nor does the evidence show the barge had been taken out of service or rendered practically incapable of maritime transportation." *Id.* at 873. In so finding, the Eighth Circuit rejected the defendant's argument that the barge's lack of self-propulsion capabilities negated vessel status, reasoning that "[a] vessel is not defined by its capability for self-propulsion. The term 'vessel' refers to any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." *Id.* at 874 (quoting *Stewart*, 543 U.S. at 497).

> 2.    *Application of Legal Test to Record Facts.*

Based on *Stewart* and its progeny, there is no room for any reasonable dispute that the SISCO I is, in fact, a vessel for Jones Act purposes. As discussed *supra*, the *Stewart* line of decisions makes clear that watercraft used or practically capable of being used as a means of transportation on water qualify as vessels. With respect to the SISCO I, the undisputed evidence reflects that not only was it capable of being used as a means of transportation on water, but also that it actually was used as a means of transportation on water, moving up and down the Mobile River approximately 8 to 10 times in 2003, and traveling via intracoastal waterways as far as Louisiana from time to time. There is no evidence whatsoever that the SISCO I had been permanently moored or anchored at the time of Baucom's injury, much less that it had been taken out of service or rendered practically incapable of maritime transportation at that time. If the SUPER SCOOP, the BT-213, and the *Bunch* cleaning barge qualify as vessels, which they plainly do under the foregoing authorities, then it is pellucidly clear that the SISCO I is likewise a vessel. Therefore, construing the facts in the light most favorable to Pinnacle/Sisco, the Court finds that the facts and law admit of only one reasonable conclusion, to-wit: that the SISCO I was a vessel for Jones Act purposes at all times relevant to this action.[6]

---

[6]    Given the clarity of the case law on this point and the absence of any facts that might conceivably place this watercraft outside the broad scope of the "vessel" definition adopted by the U.S. Supreme Court in *Stewart*, Pinnacle/Sisco's insistence to the contrary is troublesome. In a previous Order entered on June 14, 2007, the undersigned questioned this

B.      *Did Baucom Have a Substantial Employment-Based Connection with the Vessel?*

Of course, the Court's determination that, as a matter of law, the SISCO I is a vessel for Jones Act purposes is not, in and of itself, dispositive of Baucom's seaman status.  "A maritime worker seeking Jones Act seaman status must also prove that his duties contributed to the vessel's function or mission, and that his connection to the vessel was substantial both in nature and duration."  *Stewart*, 543 U.S. at 494-95; *see also Baucom v. Sisco Stevedoring, LLC*, 506 F. Supp.2d 1064, 1077 n.21 (S.D. Ala. 2007) (identifying these prerequisites for seaman status).  As an afterthought to its contention that the SISCO I is not a vessel, Pinnacle/ Sisco maintains in its trial brief, albeit in cursory and ill-defined form, that Baucom is not a seaman because neither of these criteria are satisfied.

Pinnacle/Sisco's barebones argument that Baucom's duties were not in furtherance of the SISCO I's mission or function can be quickly disposed of.  The hurdle of establishing that an employee's duties contributed to the vessel's function or mission "is relatively easy: the claimant need only show that he does the ship's work."  *Becker v. Tidewater, Inc.*, 335 F.3d 376, 387-88 (5th Cir. 2003) (citations omitted); *see also O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 63 (2nd Cir. 2002) (requirement that worker's duties contribute to vessel's function or mission is satisfied so long as worker is doing the ship's work, and it is not necessary that worker aid in navigation or contribute to vessel's transportation).  The law is clear that "this threshold requirement is very broad," encompassing "[a]ll who work at sea in the service of a ship."  *Chandris*, 515 U.S. at 368 (1995) (citation omitted).  Undisputed record evidence confirms that

---

argument and suggested that it appeared to "border on frivolity."  (Doc. 57, at 15 n.21.) Undeterred by that admonition, Pinnacle/Sisco has clung steadfastly to its "vessel" argument, presenting as the centerpiece of its Trial Brief its contention that Baucom "was not aboard a vessel in navigation at the time of his accident which disqualifies him from being a Jones Act Seaman."  (Doc. 122, at 2.)  To reach this conclusion, Pinnacle/Sisco simply ignores the entire *Stewart* line of decisions and relies on appellate rulings that no longer accurately reflect the state of the law on this issue.  *Stewart* having reshaped the jurisprudential landscape on this question so dramatically, Pinnacle/Sisco's refusal even to acknowledge that authority and its stubborn reliance on obviously superseded caselaw is both unreasonable and unavailing, and its insistence on litigating this question despite open-and-shut contrary Supreme Court and appellate case law accomplishes no constructive purpose.

the mission or function of the SISCO I is to load or unload cargo from ships.  As a crane operator, Baucom was integral to that function; after all, without someone to operate the crane, the SISCO I would be incapable of loading or unloading anything.  As such, Pinnacle/Sisco's assertion that Baucom's duties did not contribute to SISCO I's function or mission is absurd. They clearly did.  *See, e.g., Nunez v. B&B Dredging, Inc.*, 288 F.3d 271, 275 (5th Cir. 2002) (finding that dump foreman aboard dredge was performing an essential job that allowed the dredge to perform her work, such that dump foreman's duties clearly contributed to vessel's function or mission); *In re Endeavor Marine, Inc.*, 234 F.3d 287, 291 (5th Cir. 2000) (crane operator aboard floating derrick barge performed duties contributing to vessel's function and mission of loading and unloading cargo from ships).

With respect to Pinnacle/Sisco's skeletal contention that Baucom was a mere land-based stevedore whose connection to the vessel lacked a substantial connection to the SISCO I in nature or duration, neither side has briefed the issue with anything approaching thoroughness.[7] Nonetheless, upon review of the parties' spartan submissions on the issue, the Court observes that the leading case on the requirement that there be an employment-based connection to the vessel is *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995).  The *Chandris* Court explained that "[t]he fundamental purpose of this substantial connection requirement is ... to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." 515 U.S. at 368.  "The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a

---

[7]     The parties' inattentiveness to this issue, covering it only superficially in their briefs, is perplexing given that it is easily the meatiest and most interesting of the legal issues presented in their trial briefs, and it is the only one whose outcome is not obvious from the outset.  Instead of focusing on the slam-dunk non-issue of whether the SISCO I is a vessel, the parties would have greatly assisted themselves and this Court by more expansive treatment of the issue of whether Baucom enjoyed an employment-based connection to the vessel that was substantial in nature.

given time." *Id.* at 370.

The uncontroverted record evidence is that Baucom worked, ate, showered and slept aboard the SISCO I, that he remained onboard the vessel for 24 hours per day, and that he had been assigned to the SISCO I for six consecutive months at the time of his accident. This record shows that 100% of Baucom's working time was spent on board the SISCO I, a Jones Act vessel. Under any sort of temporal analysis, then, Baucom clearly had a connection with a Jones Act vessel that was substantial in duration. *See Becker*, 335 F.3d at 388 ("While seaman status is not simply a temporal concept, the amount of time a worker spends aboard a vessel in navigation is helpful in determining if that worker has attained seaman status."); *see also Nunez*, 288 F.3d at 275 (identifying rule of thumb that maritime worker must spend at least 30% of his time onboard and in the service of the vessel to qualify as a seaman under the Jones Act).

If the Court understands Pinnacle/Sisco's position correctly, however, it is that the nature of Baucom's duties (which amounted to operating a crane to load and unload cargo from other vessels, not navigating a vessel at sea himself) strip him of the requisite substantial employment-based connection.[8] This argument is squarely refuted by *In re Endeavor Marine, Inc.*, 234 F.3d 287 (5th Cir. 2000), which is directly on point. In *Endeavor Marine*, much like this case, a crane operator aboard a floating derrick barge was injured when struck by a line in the course of his duties. The crane operator in *Endeavor Marine* worked only when the barge was moored or in the process of mooring. Much like Pinnacle/Sisco has done here, the *Endeavor Marine* employer insisted that the operator was not a Jones Act seaman because his employment-related connection to the barge was not substantial in nature. Reversing the district court, the Fifth Circuit held that the substantiality test was satisfied, as a matter of law. In so concluding, *Endeavor Marine* reasoned that the crane operator had been assigned to the barge for the

---

[8]      Plaintiff selectively and misleadingly quotes *Chandris* (which was in turn parenthetically quoting, not adopting, text from an admiralty treatise) for the proposition that merely showing that an employee performed a significant part of his work onboard a vessel, with regularity and continuity, suffices to prove seaman status. This is not an accurate statement of the *Chandris* holding or reasoning. More generally, to the extent that Baucom would have the Court conclude that satisfying the duration requirement is all that is necessary, he is incorrect. *See Chandris*, 515 U.S. at 368 ("A seaman must have a connection to a vessel in navigation ... that is substantial ***in terms of both its duration and its nature***.") (emphasis added).

previous 18 months, that his primary responsibility was to operate cranes on board a vessel whose sole purpose was to load and unload cargo vessels, and that he was regularly exposed to the perils of the sea while performing these functions on a barge floating on "the brown waters of the Mississippi River." *Id.* at 292 & n.3; *see also Chandris*, 515 U.S. at 363-64 (recognizing that even a ship repairman performing traditional longshoreman work may have a substantial connection to the vessel). In finding that the crane operator was "regularly exposed to the perils of the sea," the *Endeavor Marine* court took pains to explain that this was so even though his duties "do not literally carry him to sea." 234 F.3d at 292. Rather, simply operating a crane aboard a river-based crane barge that was moored or in the process of mooring was sufficient exposure to those perils to trigger seaman status.

The Court finds that *Endeavor Marine* is indistinguishable from the case at bar. Baucom had spent six months assigned to work as a crane operator aboard a floating crane barge. His primary duty was to operate cranes on board a vessel whose sole purpose was to load and unload cargo from other vessels. And he performed these functions aboard a vessel that was always in the water (albeit the clear waters of the Mobile River), and that was routinely being tied off to other vessels and to the terminal. (In fact, Baucom's case is more compelling than the plaintiff's in *Endeavor Marine* because Baucom worked, ate, showered and slept aboard the vessel, spending 24 hours a day on the SISCO I.) These facts unambiguously establish that Baucom, like the plaintiff in *Endeavor Marine*, was regularly exposed to the perils of sea even though he was not actually "at sea." Pinnacle/Sisco's only rejoinder is its conclusory assertion that Baucom was not on a vessel in transport on navigable waters or on a vessel whose purpose was for seafaring missions; however, it is incorrect as matter of law to argue that Baucom "is not a Jones Act seaman merely because his duties do not literally carry him out to sea." *Endeavor Marine*, 234 F.3d at 292.[9]

---

[9]     Other than *Chandris*, the only case cited by Pinnacle/Sisco on this issue is *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55 (2nd Cir. 2002). The plaintiff in *O'Hara* was engaged as a dockbuilder to repair a damaged pier. To perform this function, he was assigned to a barge that was always secured to the pier. As a maritime worker assigned to repair a pier from a vessel that was at least semi-permanently secured to the pier, the *O'Hara* plaintiff was not routinely exposed to the perils of the sea. He was repairing a land-based object from a vessel secured to that very same land-based object. By contrast, Baucom lived and worked on board a

-11-

**III.    Conclusion.**

       For all of the foregoing reasons, the Court concludes that the facts and law admit of only one reasonable conclusion as to whether the SISCO I is a vessel for Jones Act purposes and whether Baucom is a seaman for Jones Act purposes with respect to his claims against Pinnacle/Sisco.  The Court answers both questions in the affirmative, as a matter of law; therefore, those issues no longer represent triable claims or defenses in this case.  The impending bench trial will be conducted in accordance with this ruling.[10]

       Plaintiff's request for sanctions, including attorney's fees and costs incurred in connection with the trial briefing process, is **denied**.  Although Pinnacle/Sisco's position on the vessel issue is not substantially justified in the wake of *Stewart*, it was reasonable (albeit ultimately unavailing) for those defendants to raise the question of whether Baucom's connection to the SISCO I was substantial in nature.  Sanctions are not appropriate in these circumstances, particularly given that Pinnacle/Sisco was simply submitting a trial brief setting forth its position on these issues in response to a judicial directive that it do so.

----

barge that was routinely being tied off to other vessels and to the dock itself, such that it was being tied and untied from docks and other vessels on a regular basis.  *See* Laskey Dep., at 19 (explaining that "[w]e tied off to work the ships and then tied on to the dock after we were done").  There is a vast, material difference between repairing a pier from a barge secured to that pier, on the one hand, and working as a crane operator on a barge loading and unloading cargo from other vessels while being intermittently tied off to and untied from those other vessels and the docks.  In the former scenario, there is no regular exposure to the perils of the sea.  In the latter, there plainly is.

       [10]       In its trial brief, Pinnacle also raised the issue of whether it qualifies as a Jones Act employer, arguing that it will present evidence at trial that it did not own, manage or maintain the SISCO I during the relevant time period.  (Doc. 122, at 9.)  This issue is beyond the scope of the Court's briefing schedule.  *See* Order (doc. 113) dated January 15, 2008, at 1 (ordering trial briefs on Pinnacle's "contentions that Baucom is not a seaman and the SISCO I is not a vessel").  Furthermore, deciding that issue now would have a negligible impact on the trial proceedings, inasmuch as Sisco and Pinnacle are represented by the same counsel through an indemnity arrangement between them and are presenting a united, joint defense in this action.  If Pinnacle is not Baucom's employer at the time of the December 2003 accident, then Sisco unquestionably would be.  How any judgment is to be allocated between Sisco and Pinnacle is an issue best left for trial.

DONE and ORDERED this 1st day of February, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE