IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT C. BAUCOM, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION 06-0785-WS-B |
| | ) |
| SISCO STEVEDORING, LLC, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This closed civil action comes before the Court on a raft of post-trial motions, including the following: Plaintiff's Motion for New Trial or in the Alternative to Alter or Amend Findings of Fact and Conclusions of Law (doc. 150), Plaintiff's Request for Oral Argument (doc. 151), Plaintiff's Motion for Guidance with Respect to Satisfying the May 5, 2008 Order (doc. 154), and Plaintiff's Motion for Leave of Court to File Plaintiff's Reply (doc. 156). All of these motions are ripe for disposition at this time.[1]

**I.   Background.**

On November 20, 2006, plaintiff Robert C. Baucom brought this action, asserting claims of negligence under the Jones Act, unseaworthiness, maintenance and cure, and the like arising from back injuries that he sustained in October 2003 and April 2005 while employed as a crane operator aboard a floating derrick barge. As originally framed, this action included among the named defendants Sisco Stevedoring, LLC ("Sisco"); PM Marine Employee Management, Inc.

---

[1]   As an initial matter, Plaintiff's Request for Oral Argument (doc. 151) is **denied**. *See* Local Rule 7.3 (providing that the court in its discretion may rule on any motion without oral argument). The Court is well-versed in the underlying circumstances and posture of this action, after having presided over the extensive pretrial motion practice in this case and the two-day bench trial in February 2008; having entered a 37-page Order (doc. 148) of findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.; and having carefully reviewed the parties' more than 50 pages of briefing and exhibits concerning the Rule 59 Motion. Based on the foregoing, the undersigned is of the opinion that oral argument would not be of substantial assistance in resolving the legal issues presented.

d/b/a Pinnacle Marine Services ("Pinnacle"); and Kinder Morgan Bulk Terminals, Inc. ("Kinder Morgan"). From early in the lifespan of this litigation, Baucom maintained that he required back surgery (specifically, a two-level lumbar fusion procedure) for which he could not afford to pay, and sought to induce one or more defendants to pay the estimated $82,000 cost of that procedure. Indeed, the evidence at trial was that Baucom's treating orthopedic surgeon, Tim S. Revels, M.D., had been recommending this surgery for Baucom since April 2006, and that such treatment recommendation remained unchanged through and including the February 2008 trial.

In January 2008, shortly before trial, Baucom entered into a settlement with Kinder Morgan, pursuant to which the latter agreed to pay certain maintenance and cure benefits to Baucom, including specifically the cost of the back surgery. Despite the fact that all financial obstacles to the surgical procedure had been lifted, Baucom never requested a stay or continuance of the trial setting to accommodate his need for back surgery, so as to enable him to present non-speculative evidence at trial concerning his physical prognosis (from both a medical standpoint and an earnings-capacity standpoint). Nor did Baucom offer expert medical testimony at trial concerning the likely results of surgery, or layman testimony concerning whether and when that surgery might be scheduled. In terms of proof at trial, then, Baucom's contemplated back surgery was an evidentiary black hole, a void from which the Court could infer nothing about timing of surgery or any reasonable forecasts of its outcome.

Whatever plaintiff's reasons for proceeding in this fashion, the net result was that the only competent, credible evidence presented at trial concerning the likely outcome of Baucom's back surgery was the deposition testimony of Dr. Revels that he simply did not know whether Baucom would be able to return to full-time work as a crane operator following the contemplated surgical procedure. Thus, the evidence before the Court at trial reflected that: (a) Baucom required back surgery; (b) a settling defendant had agreed to pay for that surgery; and (c) the surgeon had no opinion as to whether that surgical procedure would likely be successful or whether Baucom would or would not be able to return to his regular occupation as a crane operator following that surgery.

All of this uncertainty directly impacted plaintiff's ability to recover damages for future lost earnings and pain and suffering. On May 5, 2008, the undersigned entered a lengthy Order (doc. 148) setting forth the requisite findings of fact and conclusions of law relating to the

completed bench trial. The May 5 Order found for Baucom and against Sisco/Pinnacle on the Jones Act negligence and unseaworthiness causes of action. The ensuing Judgment (doc. 149) entered on May 6, 2008 included an award of back wages of $98,036.17; an award of $17,915.20, covering six months of future wages to compensate Baucom for the period of time he would be unable to work because of the surgery and post-surgery recuperation; an award of $85,000 for past pain and suffering and $40,000 for future pain and suffering; and an award of prejudgment interest in the amount of $19,886.91; for a total award of $287,384.09.

No amount of damages for future lost wages was awarded, outside of the six-month period built into the award for Baucom to undergo the surgery and recuperate from same. The omission was intentional. As grounds for this conclusion, the May 5 Order reasoned as follows:

> "Despite all of the economic, vocational and medical evidence in the record, then, the inescapable truth of the matter is that no one knows whether Baucom will be able to work after his surgery and, if so, to what extent or in what capacity. It is entirely possible that Baucom will be able to resume work as a crane operator on a full-time basis with no restrictions after he recovers from surgery. It is also possible that Baucom will not be able to return to work at all for the remainder of his working life. Between these extremes lie numerous other alternatives. There is absolutely no basis in the record for assigning any sort of probability to this broad continuum of potential outcomes. Eschewing any briefing on the subject in their post-trial submissions (despite being expressly directed to cover same), both parties simply throw the matter in the Court's lap, essentially saying, 'Here's the range of possibilities, Judge. Pick the one you like the best.' This Court could make a guess that Baucom will be able to go back to work as a crane operator. This Court could make a guess that he will be confined to sedentary work as a dispatcher or escort vehicle driver, or that he will be able to work light duty as a delivery driver or courier. This Court could make a guess that the surgery will fail and that Baucom will be permanently disabled and unable to work for the rest of his life. But the central point is this: Each of these scenarios would be sheer speculation by the Court, untethered from any evidentiary foundation. Plaintiff has proffered no proof, expert or lay, from which the Court might be able to assign probabilities to these different possible outcomes, or otherwise to make factual findings as to their relative likelihood."

(May 5 Order (doc. 148), at 28-29.) To the extent that Baucom sought to cast blame on defendants for the total failure of proof in this area, on the ground that those defendants should have agreed to pay for his surgery sooner, the Court rejected that contention, as follows: "At the end of the day, it is plaintiff's sole responsibility to prove up his damages with reasonable certainty. Baucom having failed to do so, he cannot expect this Court to indulge a speculative

assumption that his surgery will not bring about a good result." (*Id.* at 29-30 n.37.)

The Court's denial of future lost wages post-recuperation on the grounds that Baucom had failed to establish those damages with anything approaching reasonable certainty lies at the heart of the post-trial motions.

## II.     The Motion for New Trial.[2]

### A.     *Grounds for the Motion.*

On May 19, 2008, plaintiff filed his Motion for New Trial (doc. 150) pursuant to Rule 59(a)(2), Fed.R.Civ.P.[3] In a nutshell, plaintiff seeks an award of additional future lost wages and additional damages for future pain and suffering. The twist is that he ascribes no error to the conclusions of law concerning those categories of damages, as recited in the May 5 Order. Baucom does not argue that he did in fact prove with reasonable certainty that he was entitled to future lost wages following the surgery recovery period. He does not argue that this Court applied an incorrect legal standard or overlooked record evidence presented at trial concerning the likelihood that Baucom's surgery would have a poor outcome, such that he would continue to incur lost wages even after a reasonable post-surgery recovery period.

Instead, the Motion for New Trial reflects that Dr. Revels performed the lumbar fusion procedure on Baucom on May 12, 2008 (fully three months after the bench trial in this case). Just three days after that surgery, Dr. Revels executed an Affidavit wherein he opined that the extent of the injury was more severe than he had anticipated, calling for a three-level fusion rather than a two-level fusion. (Doc. 150, Exh. A, ¶ 2.) More importantly, Dr. Revels

---

[2] In connection with briefing the Motion for New Trial, plaintiff filed a Motion for Leave of Court to File Plaintiff's Reply (doc. 156). Plaintiff's reply brief has been accepted and considered by this Court; therefore, the Motion for Leave of Court is **granted**.

[3] It is unusual for a prevailing plaintiff in this District Court to seek a new trial despite being armed with a favorable judgment in an amount exceeding a quarter of a million dollars. These circumstances become all the more peculiar when one considers that Sisco/Pinnacle, the entities against which that $287,000 judgment had been entered, did not seek relief from that judgment, but were apparently prepared to pay the judgment *in toto*, even going so far as to mail checks to plaintiff's counsel in full satisfaction of that amount. Not surprisingly, Sisco/Pinnacle stopped payment on those checks upon learning of plaintiff's Rule 59 Motion. Thus, one effect of plaintiff's Motion for New Trial has been to delay plaintiff's own ability to collect the Judgment entered in his favor.

articulated, for the first time, his opinion "within a reasonable degree of medical probability and certainty, that as a result of the three (3) level fusion, Mr. Baucom is not now and will not be physically capable of returning to his pre-injury work as a crane operator. Further, it is my opinion that Mr. Baucom will not be able to engage in work in the medium to heavy category." (*Id.*, ¶ 4.) Plaintiff seeks to parlay these brand-new opinions from Dr. Revels into either a new trial on damages or an amendment of the Judgment to award additional sums to Baucom for future lost income and future pain and suffering. Sisco/Pinnacle oppose the relief requested in the Motion.

   **B.     Analysis.**
         1.     *The "Newly Discovered Evidence" Argument.*

Plaintiff's Motion is brought pursuant to Rule 59(a)(2), which provides as follows: "After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Rule 59(a)(2), Fed.R.Civ.P.[4] Applying this Rule, courts have explained that "a trial court should be most reluctant to set aside that which it has previously decided unless convinced that it was based on a mistake of fact or clear error of law, or that refusal to revisit the earlier decision would work a manifest injustice." *LiButti v. United States*, 178 F.3d 114, 118 (2nd Cir. 1999) (recognizing newly discovered evidence as one circumstance in which it may be appropriate to grant a new trial in a nonjury action); *see also Sogeti, U.S.A., L.L.C. v. Whirlwind Bldg. Systems, Inc.*, 496 F. Supp.2d 380, 381 (S.D.N.Y. 2007) (Rule 59 motions for new trial "will not be granted simply to reconsider issues that have already been fully litigated and upon which a legally sound decision has already been rendered"); *Kuch v. United States*, 2007 WL 3129674, *2 (E.D. Wash. Oct. 23, 2007) (relief

---

[4] The determination of whether or not to grant a motion for new trial is committed to the sound discretion of the district court. *See Carter v. DecisionOne Corp.*, 122 F.3d 997 (11th Cir. 1997) ("Whether a new trial on damages should be granted is within the sound discretion of the district court ...."); *Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 644 (11th Cir. 1990) ("Motions for a new trial are within the sound discretion of the district court ...."); *Solmitz v. United States*, 640 F.2d 1089, 1091 n.1 (9th Cir. 1981) ("The decision whether to amend findings of fact or conclusions of law in light of newly discovered evidence rests within the discretion of the district court.").

under Rule 59(a)(2) is appropriate in the presence of manifest error of law, manifest error of fact, or newly discovered evidence); *Tampa Port Authority v. M/V Duchess*, 65 F. Supp.2d 1303, 1305 (M.D. Fla. 1998) ("In a nonjury case, a motion for a new trial should be based upon a 'manifest error of law or mistake of fact' and should only [be] granted for 'substantial reasons.'") (citation omitted).  Plaintiff does not contend that the findings of fact and conclusions of law set forth in the May 5 Order were marred by manifest errors of fact or law; instead, he asserts that the new affidavit from Dr. Revels reciting opinions and information that came into existence following the trial date and following the May 5 Order and May 6 Judgment constitutes "newly discovered evidence" warranting a new trial.[5]

As a general rule, a motion for new trial can be granted on the basis of newly discovered evidence only where all of the following criteria are satisfied: "(1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000) (citation omitted).  Baucom argues that all elements of this test are satisfied here.

Notwithstanding those general criteria for newly discovered evidence, binding precedent also recognizes an additional overarching requirement, namely, that in order for evidence to qualify as "newly discovered" for purposes of a motion for new trial, "the evidence must be in existence at the time of the trial." *N.L.R.B. v. Jacob E. Decker and Sons*, 569 F.2d 357, 364 (5th

---

[5] In considering plaintiff's Rule 59(a)(2) motion, the Court bears in mind several general principles.  "Failure to present evidence at trial is not a grounds for a new trial." *Hewlett-Packard Co. v. Mustek Systems, Inc.*, 340 F.3d 1314, 1323 (Fed. Cir. 2003).  Further, the remedy of granting a motion for new trial is "sparingly used." *Johnson v. Spencer Press of Maine, Inc.*, 364 F.3d 368, 375 (1st Cir. 2004).  "A trial court should not grant a new trial merely because the losing party could probably present a better case on another trial." *Hannover Ins. Co. v. Dolly Trans Freight, Inc.*, 2007 WL 170788, *2 (M.D. Fla. Jan. 18, 2007).  That said, "[a] court may ... order a new trial limited to the issue of damages," *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1328 n.6 (11th Cir. 1999), which is precisely the relief sought by Baucom at this juncture.  Thus, it is at least theoretically possible under the Federal Rules of Civil Procedure for Baucom to receive a new trial confined to the issue of damages and predicated on newly discovered evidence.

Cir. 1978); *see also Betterbox Communications Ltd. v. BB Technologies, Inc.*, 300 F.3d 325, 331 (3rd Cir. 2002) ("newly discovered evidence must concern facts in existence at the time of trial"); *Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 136 (6th Cir. 1990) (discussing "well-conceived rule that newly discovered evidence for motions under Rule 59 or Rule 60(b)(2) must pertain to evidence which existed at the time of trial"); *Rivera v. M/T Fossarina*, 840 F.2d 152, 156 (1st Cir. 1988) (evidence that came into existence after the court's judgment is not newly discovered evidence within the meaning of Rules 59 and 60); *Peacock v. Board of School Com'rs of City of Indianapolis*, 721 F.2d 210, 214 (7th Cir. 1983) ("Under Rule 59, the evidence also must have been in existence at the time of trial ...."). This is so because of bedrock principles of finality and certainty of judicial proceedings. Evidence which has only come into existence after the conclusion of a trial cannot justify the granting of a new trial "for the obvious reason that to allow such a procedure could mean the perpetual continuation of all trials." *Jacob E. Decker*, 569 F.2d at 364 (citation omitted); *see also State of Washington v. United States*, 214 F.2d 33, 46 (9th Cir. 1954) ("The policy of law in having an end to litigation, would in most cases prevent the reopening of a case because of after-occurring events."); *Hudson's Bay Co. Fur Sales v. American Legend Co-op.*, 115 F.R.D. 337, 341 (D.N.J. 1987) (cautioning that to allow new trial based on evidence that was new, not newly discovered, would be to "assure unending litigation and the demise of the concept of finality").

An example from the case law will illustrate the application of this limitation on the newly discovered evidence rule in circumstances markedly similar to those presented by Baucom. In *Ryan v. U.S. Lines Co.*, 303 F.2d 430 (2nd Cir. 1962), an injured seaman brought an action for maintenance and cure and other remedies against the owner of the vessel on which injury occurred. After a bench trial, the court found unseaworthiness and awarded damages in the form of lost wages, pain and suffering, and maintenance and cure. The plaintiff then moved for new trial on the basis of newly discovered evidence, pointing to an affidavit signed by his treating physician, in which the doctor averred that he had examined the plaintiff several times following the trial and that his prognosis was one of continued disability and need for medical treatment. The trial court denied the motion for new trial. On appeal, the Second Circuit agreed, opining that the newly discovered evidence rule "permits reopening a judgment ***only on the discovery of evidence in existence and hidden at the time of the judgment, and the results of***

*new physical examinations are not such evidence*."  *Ryan*, 303 F.2d at 434 (emphasis added).

In briefing the issue, Baucom concedes that "these events may not be strictly considered as newly discovered evidence." (Doc. 150, at 12.) This concession is prudent and correct. Baucom finds himself in the same boat as the *Ryan* plaintiff. At the time of the nonjury trial, Baucom had not received the lumbar fusion surgery his orthopedist, Dr. Revels, had recommended. Testimony admitted at trial reflected that Dr. Revels had no opinion as to the likely success of the procedure if and when it might be performed. Three months after trial, and nearly a week after the entry of judgment, Dr. Revels performed the surgery and, based on subsequent examination, executed a new affidavit unveiling his newly formed opinion that Baucom would never be able to return to work as a crane operator. Such evidence was not in existence at the time of the trial, but instead is clearly newly created evidence concerning post-trial developments. Therefore, pursuant to *Jacob E. Decker* and its progeny, the Court finds that Dr. Revels' Affidavit of May 15, 2008 does not constitute "newly discovered evidence" that might warrant the granting of relief pursuant to Rule 59(a)(2), Fed.R.Civ.P.[6]

---

[6] Any harshness of this ruling is mitigated by countervailing considerations of finality and certainty. If judgments could be said aside and new trials granted based on post-trial changes in a plaintiff's medical condition or the post-trial evolution of the opinions of a plaintiff's treating physician, then no judgment in a Jones Act case (or any case involving personal injuries) would ever be final. At trial, the medical evidence before the Court was that it was impossible to know whether Baucom could return to his crane operator duties following surgery. Post-trial, three days after surgery, Dr. Revels formulated a new opinion that Baucom will never be able to return to work as a crane operator. Suppose that the Court were to grant a new trial on damages and enter a new judgment based on Dr. Revels' new opinion. Then suppose that, following that second trial, Baucom experienced an unexpected change in condition (either for better or for worse) during his rehabilitation from surgery that prompted Dr. Revels to revise his opinion yet again. Would we then have a third trial on damages on the basis of newly discovered evidence? And so on. The intractable dilemma presented by requests such as plaintiff's is as follows: "Where [medical] facts are at issue, it is not unexpected, given the nature of the process, that the passage of time will bring forth further [medical] data and inquiry relating to the ultimate [medical] fact at issue. To reopen the trial's determination of [medical] truth, however, runs squarely into the fundamental principal of certainty." *Toole*, 235 F.3d at 1316 (citation omitted). Our system of justice simply could not function if every post-trial change in a plaintiff's medical condition justified setting aside a judgment and having a new trial on damages. That is the reason for the black-letter rule that newly discovered evidence must have been in existence at the time of trial, and that is the reason why Baucom cannot receive relief on his Rule 59(a)(2) motion.

       *2.*     *The Rule 60(b)(5) Argument.*

As an alternative basis for his request for new trial, Baucom invokes Rule 60(b)(5), which allows for relief from a judgment under certain circumstances, including when "applying it prospectively is no longer equitable." Rule 60(b)(5), Fed.R.Civ.P. On its face, however, this narrow ground for relief from a judgment is inapplicable here.

As clearly and consistently construed in this Circuit, "[R]ule 60(b)(5) applies only to judgments that have prospective effect as contrasted with those that offer a present remedy for a past wrong." *Cook v. Birmingham News*, 618 F.2d 1149, 1152 (5th Cir. 1980) (citation omitted) (describing a continuing injunction as a judgment with the requisite prospective effect for purposes of Rule 60(b)(5)); *see also Gibson v. Maxwell House, A Div. of General Foods Corp.*, 738 F.2d 1153, 1156 (11th Cir. 1984) (pointing out that a party "continuing to feel the effects of a money judgment against him" does not qualify as a "prospective effect" within the meaning of Rule 60(b)(5)); *Stokors S.A. v. Morrison*, 147 F.3d 759, 762 (8th Cir. 1998) ("We conclude that Rule 60(b)(5)'s equitable leg cannot be used to relieve a party from a money judgment, and hold that the district court abused its discretion in granting relief to Morrison under this provision."); *DeWeerth v. Baldinger*, 38 F.3d 1266, 1275 (2nd Cir. 1994) ("judgments involving injunctions have 'prospective application,' while money judgments do not"); *United States v. Eyler*, 778 F. Supp. 1553, 1557 (M.D. Fla. 1991) (for purposes of a Rule 60(b)(5) motion, "judgments awarding current monetary damages for past wrongdoings are properly considered retroactive, not prospective in nature").

Baucom apparently contends that the Judgment entered on May 6, 2008 in the amount of $287,384.09 is "no longer equitable" to him because it does not adequately take into account his medical condition and future earnings capacity in the wake of the May 12, 2008 surgical procedure. The Judgment was exclusively an award of monetary damages, as a present remedy for a past wrong. Accordingly, pursuant to *Cook*, *Gibson* and the like, the Judgment lacks prospective application, within the meaning of Rule 60(b)(5), and that provision therefore cannot justify the granting of relief to Baucom in this case.

       *3.*     *Equitable Considerations.*

Finally, even if the plaintiff could satisfy the technical requirements for a new trial or relief from judgment under any prong of Rules 59 or 60, the Court would nonetheless exercise its

discretion to deny the Motion for New Trial or to Alter or Amend Findings of Fact and Conclusions of Law.[7]  Here the equities lean heavily against granting plaintiff the relief sought.

Simply put, Baucom is in a dilemma of his own creation.  Even as he pronounced himself ready to go to trial in February 2008, he knew that he had not yet received the lumbar fusion surgery that Dr. Revels had recommended.  He knew that Dr. Revels had testified in depositions in this case that he had no opinion as to the likely outcome of surgery.  Plaintiff knew that there was a vast continuum of possible results, ranging from his being able to return to his former occupation as a crane operator without restrictions, to perhaps being limited to sedentary or light-duty work, to perhaps being permanently and totally disabled for the rest of his life.  Plaintiff knew (or should have known) that this broad spectrum of potential results from surgery, with no evidentiary basis for sifting among them, would have profound effects on the ability of this Court to award him damages for future lost earnings or future pain and suffering.  Yet, despite these circumstances, plaintiff elected to go forward to trial in February 2008.

In his reply brief, plaintiff complains that he "had virtually no control over the timing of this litigation."  (Doc. 157, at 7 n.4.)  That statement is not correct.  This Court did not force Baucom to go to trial in February 2008.  At any time in the process, plaintiff was free to request a continuance or stay of these proceedings pending the results of surgery.  Certainly, he could have done so at the Final Pretrial Conference in January 2008.  At that time, Baucom knew that Kinder Morgan had agreed to pay for his surgery, so any monetary impediment to his going forward with the surgery would have evaporated.  From his dealings with Dr. Revels, Baucom must have known that the surgery could be scheduled in relatively short order, such that a lengthy continuance would not have been necessary.  Had he moved for a continuance or stay on the grounds that his future earnings capacity and pain and suffering levels were unknown and unknowable until the pending surgery was performed, such a request would almost certainly

---

[7]  This section is intended as a catch-all to address various equitable arguments propounded in plaintiff's briefs that he has not aligned to any specific provision of Rule 59 or Rule 60.  It is also intended to explain why plaintiff is not entitled to relief under the principle articulated in certain hoary precedents from other jurisdictions that "a general exception exists where substantial justice requires a reopening and when the after-occurring event is of major importance in its impact on the case."  *State of Washington*, 214 F.2d at 46-47.

have been granted.  Instead, plaintiff elected not to move for stay or continuance, and the case remained on its scheduled track for trial.[8]  The point is that, despite knowledge of all of these facts and circumstances, Baucom chose to proceed to trial in February 2008.  That inescapable fact drastically undercuts his present contention that it would be inequitable not to reopen the judgment in this case and have a new trial on damages issues to account for his May 2008 surgery.

Furthermore, plaintiff's filings do not evince an appreciation for the magnitude of the modification he is requesting.  Even if this Court were inclined to grant him relief, that relief would not take the form of summarily amending the May 6 Judgment to tack on an additional $394,085 in future lost earnings and $300,000 in future pain and suffering as he requests.  This Court would not blindly accept Dr. Revels' May 15 affidavit without affording Sisco/Pinnacle a reasonable opportunity to test and rebut it.  Indeed, the interests of fairness would demand that any relief in this case involve reopening discovery, at a minimum to allow defendants to depose Dr. Revels concerning his new opinions, to allow defendants to have plaintiff evaluated by their own experts, to allow time for all experts to prepare supplemental reports, and the like.  There would be layers of expert reports and expert depositions, all culminating in another trial at which Baucom would ask this Court to determine a second time - based on evidence he never presented the first time - whether he was entitled to future lost income following his recuperation from surgery.  There would be considerable expenditure of time and effort by this Court and by the parties, all in the name of giving Baucom a second chance to prove up a category of damages that he failed to establish the first time around.  A conservative estimate is that these procedures would consume at least six months.  All of this, of course, runs contrary to bedrock principles of

---

[8]  In response to a similar suggestion by Sisco/Pinnacle, plaintiff protests that any argument that he could have asked for a continuance "is disingenuous and insensitive to his predicament" because "due to plaintiff's impecunious state, requesting a continuance ... was not in his best interest." (Doc. 157, at 12 n.4.)  Be that as it may, plaintiff made a conscious, deliberate choice.  As of January 2008, he had two options.  First, he could have asked for a stay or continuance to shore up his evidence on future losses and, potentially, bolster his recovery at trial.  Second, he could have moved forward to trial, knowing that his future damages evidence was suspect at best, in the interest of receiving a judgment as quickly as possible.  Having elected the second option, plaintiff cannot expect succor from the clearly foreseeable consequences of that decision.  Simply put, he cannot have his cake and eat it too.

finality and judicial economy.  It is neither appropriate nor feasible to hold a new trial and enter a new judgment every time an injured plaintiff's physical condition changes in some significant way or his treating physicians alter their opinions in some material respect.

In light of the foregoing, it is the opinion of this Court that the interests of equity and substantial justice do not favor setting aside or altering the Judgment in this case to account for the effects of a post-judgment surgical procedure on plaintiff's future earnings prospects and pain and suffering.[9]

### III.   Conclusion.

For all of the reasons set forth above, it is hereby **ordered** as follows:

1. Plaintiff's Motion for New Trial or in the Alternative to Alter or Amend Findings of Fact and Conclusions of Law (doc. 150) is **denied**;

2. Plaintiff's Request for Oral Argument (doc. 151) is **denied**;

3. Plaintiff's Motion for Leave of Court to File Plaintiff's Reply (doc. 156) is **granted**; and

4. Plaintiff's Motion for Guidance with Respect to Satisfying the May 5, 2008 Order (doc. 154) is **denied**.[10]

---

[9]   In so concluding, the Court finds it unnecessary to referee the parties' gratuitous squabble concerning plaintiffs' counsel's protest that defense counsel has impugned their integrity and honesty by accusing them of manufacturing evidence.  To the extent that accusations against plaintiff's counsel's have been made, the Court has not considered them in this Order, and this ruling is in no way predicated on findings of wrongdoing by plaintiff's counsel.  The same goes for plaintiff's counsel's barrage of name-calling directed at defense counsel (including the descriptors "obstinacy," "duplicitous," "audacity" and "obtuse" all within the span of a few pages).

[10]   In this Motion, plaintiff explained that Sisco/Pinnacle had tendered payment in full satisfaction of the Judgment in this case, only to stop payment on the proceeds upon learning that plaintiff had filed a Motion for New Trial.  Plaintiff's Motion requested permission to file a Satisfaction of Judgment or alternatively to receive guidance from the Court as to how plaintiff should respond to Sisco/Pinnacle's request to return the checks.  The filing of a Satisfaction of Judgment is obviously inappropriate here because defendants have not paid that Judgment; rather, defendants exercised their right to stop payment on that Judgment to preserve their appellate rights upon learning that plaintiff had elected to file a Motion for New Trial.  It is not this Court's place to dictate to Sisco/Pinnacle whether to pay or appeal the Judgment, any more than it is this Court's place to tell plaintiff how to handle a situation in which the payment of a

DONE and ORDERED this 12th day of June, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

Judgment has been impeded by plaintiff's decision to file a Motion for New Trial.  Such litigation strategy calls are entrusted to counsel.